IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dale Gorney, a single man,<br><br>Plaintiff,<br><br>v.<br><br>Arizona Board of Regents; Thomas P. Miller; Dan Nelson; Jacqueline Lee Mok; Allison Vaillancourt; Steve Husman,<br><br>Defendants. | No. CV-13-00023-TUC-CKJ(HCE)<br><br>ORDER |

On July 10, 2013, Magistrate Judge Hector C. Estrada issued a Report and Recommendation, (Doc. 22), in which he recommended dismissing the Arizona Board of Regents from Plaintiff's federal claims with prejudice, dismissing Counts One, Six and Seven of Plaintiff's Complaint as untimely and dismissing Counts Two through Five without prejudice for failing to state a valid claim. Magistrate Judge Estrada further recommended denying Plaintiff's Motion for Summary Judgment and Motion for Judgment on the Pleadings as moot.

Magistrate Judge Estrada advised the Parties that written objections to the Report and Recommendation were to be filed within fourteen days of service of a copy of the Report and Recommendation pursuant to 28 U.S.C. §636(b). Plaintiff has filed an objection. (Doc. 23). Defendants have filed a response. (Doc. 24).

I.     Background[1]

In 2011, Plaintiff was employed with the University of Arizona. He alleges that from March 2011 through May 2011, he submitted three alleged wrongful conduct disclosures and one whistleblower complaint to the University of Arizona. Specifically, he alleges that he had information alleging wrongful conduct which evidenced a violation of law, mismanagement, and gross waste or misappropriation of public funds. He further alleged an abuse of authority to investigate alleged wrongful conduct by Steve Husman, the director of the University of Arizona, Tucson Area Agricultural Center.

Dr. Allison Vaillancourt, the Vice President of Human Resources, was assigned to investigate Plaintiff's allegations of wrongful conduct. Dr. Vaillancourt forwarded Plaintiff's disclosures to Thomas P. Miller, an Associate Provost for Faculty Affairs. Plaintiff alleges that Mr. Miller acted in bad faith when he concluded that Plaintiff's disclosures were illegitimate and did not warrant any investigation.

After reviewing Mr. Miller's conclusions, Plaintiff requested a whistleblower review hearing. Dr. Vaillancourt reviewed Plaintiff's request but ultimately agreed with Mr. Miller's determination of Plaintiff's disclosures. On May 17, 2011 Dr. Vaillancourt denied Plaintiff's request for a whistleblower review hearing. Plaintiff alleges that Dr. Vaillancourt acted inappropriately in denying his request for a whistleblower review hearing due to her conflict of interest in the matter.

Plaintiff alleges that as a result of his disclosures, he was subjected to a retaliatory investigation on April 8, 2011 by Director Husman in connection with Plaintiff's request for 18 hours of overtime compensation. During these 18 hours of overtime, Plaintiff worked on issues related to his disclosures. Director Husman denied Plaintiff's overtime compensation and demanded that Plaintiff meet with him to discuss the specific job duties that required the use of 18 hours of overtime. Plaintiff refused to discuss his use of overtime with Director Husman and he received a written reprimand. Plaintiff was then

---

[1] The background information is principally derived from Plaintiff's Complaint. (Doc. 1-2). The Court accepts as true the factual allegations set forth in Plaintiff's Complaint for the purposes of resolving these motions.

placed on disciplinary probation, received a pre-discharge notice and was ultimately terminated from his employment on May 25, 2011.

Plaintiff alleges that his disclosures should have remained confidential pursuant to the University of Arizona whistleblower policy.  Also, since his use of overtime was directly related to the filing of his disclosures, which were directly related to Director Husman's conduct, he should not have been required to meet with Director Husman to discuss his use of overtime.   Finally, Plaintiff alleges that the Defendants including Jacqueline Lee Mok, the University of Arizona Investigation Officer for the President's Office, failed to adhere to Arizona law by finding his disclosures illegitimate.

*Procedural History*

On December 12, 2012, Plaintiff filed a complaint in Pima County Superior Court. In his Complaint, Plaintiff alleges that his termination from employment at the University of Arizona was (1) in violation of state public policy; (2) a retaliatory discharge in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq.*; (3) retaliation in violation of the First Amendment; (4) a violation of the Equal Protection Clause of the Fourteenth Amendment; (5) a violation of the Procedural Due Process rights of the Fourteenth Amendment; (6) a breach of the implied-in-law covenant of good faith and fair dealing; and (7) tortious interference with a contractual relationship. (Doc. 1-2). Plaintiff's Complaint seeks (1) reinstatement of employment; (2) a written employment contract; (3) back-pay; (4) loss of earnings; (5) general damages; and (6) punitive damages.

On January 10, 2013, Defendants filed a notice of removal in this Court. (Doc. 1). After removal, Defendants moved to dismiss this matter, pursuant to Fed.R.Civ.P. 12(b)(6), arguing the Plaintiff's Complaint fails to state any claim upon which relief may be granted. (Doc. 3). Plaintiff filed his response on January 18, 2013.  (Doc. 7).  On January 22, 2013, Plaintiff filed an Amended Response to Defendants' Motion to Dismiss.  (Doc. 9).  Defendants filed a Reply on February 1, 2013.  (Doc. 11).  On

February 5, 2013, Plaintiff filed an Objection to Defendants' Reply in Support of Defendants' Motion to Dismiss. (Doc. 13). Then on February 13, 2013, Plaintiff filed an Amended Objection to Defendants' Reply in Support of Defendants' Motion to Dismiss. (Doc. 14).

On February 19, 2013, Plaintiff filed a Motion for Summary Judgment. (Doc. 15). Defendants filed a Response on March 21, 2013. (Doc. 16). Plaintiff filed a Reply on March 27, 2013. Then, on May 14, 2013, Plaintiff filed a Motion for Judgment on the Pleadings. (Doc. 18). Defendants filed a Response on May 15, 2013. (Doc. 19). Plaintiff filed his Reply on May 22, 2013. (Doc. 20). On June 4, 2013, Plaintiff filed an Amended Reply in support of his Motion for Judgment on the Pleadings. (Doc. 21).

On July 10, 2013, Magistrate Judge Hector C. Estrada issued a Report and Recommendation. (Doc. 22). In his Report and Recommendation, Magistrate Judge Estrada recommended dismissing the Arizona Board of Regents from Plaintiff's federal claims with prejudice, dismissing Counts One, Six and Seven of Plaintiff's Complaint as untimely and dismissing Counts Two through Five as failing to state a claim with leave to amend. Magistrate Judge Estrada further recommended denying Plaintiff's Motion for Summary Judgment and Motion for Judgment on the Pleadings as moot.

Plaintiff filed Objections to Magistrate Judge Estrada's Report and Recommendation on July 26, 2013. (Doc. 23). Plaintiff agrees with Magistrate Judge Estrada's recommendation that his Complaint was insufficient and he does not object to Magistrate Judge Estrada's recommendation that Counts Three through Five of Plaintiff's Complaint be dismissed with leave to amend.

However, Plaintiff objects to the dismissal of Count Two of his Complaint alleging retaliatory discharge in violation of the Fair Labor Standards Act ("FSLA"). Further, Plaintiff objects to the dismissal of the Arizona Board of Regents from his federal claims, the dismissal of his state claims as untimely, and the denial of his Motions for Summary Judgment and Judgment on the Pleadings. Defendants have filed a response to Plaintiff's objections. (Doc. 24).

*II.    Standard of Review*

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). Pursuant to 28 U.S.C. § 636(b)(1), if a party makes a timely objection to a magistrate judge's recommendation, then this Court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." *See also Schmidt v. Johnstone*, 263 F.Supp.2d 1219, 1226 (D.Ariz. 2003) (reading the Ninth Circuit's decision in *Reyna-Tapia* as adopting the view that district courts are not required to review "any issue that is not the subject of an objection"); *United States v. Reyna-Tapia*, 328 F.3d 1114 (9th Cir.2003) (disregarding the standard of review employed by the district court when reviewing a report and recommendation to which no objections were made).

*Arizona Board of Regents*

Magistrate Judge Estrada concluded that Plaintiff's federal claims against the Arizona Board of Regents ("the Board"), specifically Counts Two through Five, fail as a matter of law. Counts Three, Four and Five allege violations of Plaintiff's rights pursuant to the First Amendment and Fourteenth Amendment. These claims are brought pursuant to 42 U.S.C. §1983. *See Gomez v. Toledo*, 446 U.S. 635, 638 (1980)(citing 42 U.S.C. §1983)("Section 1983 provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' by any person acting 'under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory.'").

"The eleventh amendment bars suits in federal courts by private citizens against a state." *Ronwin v. Shapiro*, 657 F.2d 1071, 1073 (9th Cir. 1981). The Board's funds consist of state funds and it is treated as the State of Arizona pursuant to Arizona law. *Rutledge v. Arizona Bd. of Regents*, 660 F.2d 1345, 1349 (9th Cir. 1981) (*abrogated on*

*other grounds Haygood v. Younger*, 769 F.2d 1350, 1356 (9th Cir. 1985).   A State is not a person against whom a §1983 claim for money damages may be asserted.  *Will v. Michigan Dept. of State Policy,* 491 U.S. 58, 66, 109 S.Ct. 2304 (1989).  As such, the Board possesses Eleventh Amendment immunity from Plaintiff's §1983 claims.  *See Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201 (9th Cir. 1988); *see also Ansel Adams Publishing Rights Trust v. PRS Media Partners, LLC*, 502 Fed. Appx. 659, 660-661 (9th Cir. 2012)(the Board, as the governing body for Arizona's public universities, is immune from federal law suits pursuant to the Eleventh Amendment).

Count Two alleges that Defendants violated the Fair Labor Standards Act. Congress has not abrogated the State's sovereign immunity from FLSA law suits.  *See Alden v. Maine*, 527 U.S. 706, 712, 119 S.Ct. 2240, 2246 (1999).  Thus, the Eleventh Amendment protects the Board from suit under the FLSA absent a waiver of immunity. *See Id.*  Plaintiff argues that the Board waived its immunity when it removed this action from state court to federal court.  *See Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 616-617, 122 S.Ct. 1640 (2002)(holding that a State's act of removing a lawsuit from state court to federal court waives its Eleventh Amendment immunity from State based claims).

Two years after the Supreme Court decided *Lapides*, the Ninth Circuit Court of Appeals extended the ruling in *Lapides* to federal claims.  *Embury v. King*, 361 F.3d 562, 566 (9th Cir. 2004).  However, the *Embury* court noted that its holding did not apply to cases where Congress acted beyond its power over the States and had not validly abrogated the State's immunity through the Fourteenth Amendment. *Embury v. King*, 361 F.3d 562, 566, n.20 (9th Cir. 2004).  Thus, since Congress has not validly abrogated the States' sovereign immunity on FLSA claims, *see Alden v. Maine*, 527 U.S. 706, 712, 119 S.Ct. 2240, 2246 (1999), the Court finds that the Board did not waive its immunity on Plaintiff's FLSA claim by removing this action to federal court.  Accordingly, the Board is dismissed as to the federal claims in Plaintiff's Complaint.

*State Claims – Statute of Limitations*

When the statute of limitations forms the basis of a motion to dismiss for failure to state a claim, the motion can only be granted "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir.1980); *see also TwoRivers v. Lewis,* 174 F.3d 987, 991 (9th Cir.1999). The complaint cannot be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. United States,* 68 F.3d 1204, 1207 (9th Cir.1995).

Pursuant to Arizona Revised Statute §12-821, claims against any public entity or public employee are subject to a one year statute of limitations.[2] *Dube v. Likins*, 216 Ariz. 406, 416 (Ariz. Ct. App. 2007).   Plaintiff does not dispute that his state claims are subject to a one year statute of limitations.  A cause of action against a public entity or public employee accrues "when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition which caused or contributed to the damage." A.R.S. § 12–821.01(B).

Defendants contend that Plaintiff's claim accrued when his employment was terminated on May 25, 2011.  As such, Plaintiff was required to file suit against Defendants on or before May 25, 2012.  Since Plaintiff's Complaint was filed with the Pima County Superior Court on December 12, 2012, it was untimely.

Plaintiff does not dispute that he was terminated on May 25, 2011 or that he filed his Complaint on December 12, 2012.  However, Plaintiff argues that pursuant to Ariz.R.Stat. §12-821.01(C), the statute of limitations is tolled pending the resolution of any administrative remedies.  Plaintiff explains that after he was terminated, he appealed his termination pursuant to The University of Arizona policy 406.[3]  On July 14, 2012,

---

[2] The Defendants in this case consist of the Arizona Board of Regents, a public entity, and several public employees.

[3] The University of Arizona Staff Dispute Resolution Procedures provide that "any

- 7 -

1 Plaintiff alleges that he received the final determination affirming his termination, thus concluding his administrative remedies. Accordingly, Plaintiff contends that since his claim was filed within one year after July 14, 2012, it is timely.

Pursuant to Ariz.R.Stat. §12-821.01(C), "any claim that *must* be submitted to a binding or nonbinding dispute resolution process or an administrative claims process or review process pursuant to … administrative or governmental rule or regulation or contractual term shall not accrue for the purposes of this section until all such procedures, processes, or remedies have been exhausted." Ariz.R.Stat. §12-821.01(C)(emphasis added).

Thus, A.R.S. §12-821.01(C) applies only if Plaintiff was required to exhaust the administrative remedies provided by UA Policy 406.0 before seeking relief in the courts. *See Kosman v. State*, 199 Ariz. 184, 186 (Ariz. Ct. App. 2000). Defendants argue that the use of the word "may" in the University of Arizona Staff Dispute Resolution Procedure makes it permissive rather than mandatory. *See Walters v. Maricopa County*, 195 Ariz. 476, 481 (Ariz. Ct. App. 1999). As such, it is not subject to §12-821.01(C) tolling. Magistrate Judge Estrada agreed with Defendants and recommended dismissing Counts One, Six and Seven as untimely. However, Plaintiff argues that even if the statute of limitations was not tolled pursuant to §12-821.01(C), his claim is subject to equitable tolling. Magistrate Judge Estrada did not address the issue of equitable tolling in his Report and Recommendation.

The doctrine of equitable tolling is recognized in Arizona. *McCloud v. State, Ariz. Dept. of Public Safety*, 217 Ariz. 82, 87 (Ariz. Ct. App. 2007). The Ninth Circuit Court of Appeals has applied the doctrine of equitable tolling when there is a lack of clarity in the law. *Capital Tracing, Inc. v. United States*, 63 F.3d 859, 862 (9th Cir. 1995). In

---

classified employee *may* file a dispute resolution request where the action complained about involves a violation of public policy such as retaliatory action for making a good-faith disclosure of alleged wrongful conduct to a public body or to the designated University official." (Doc. 11, Staff Dispute Resolution Procedure, UA Policy 406.0 at 1)(*emphasis added*).

*Walters*, the court held that the use of the word "may" in A.R.S. §38-532(H)[4] rendered use of the administrative remedies permissive and did not require a complaint to such a board prior to filing a civil action pursuant to §23-1501. *Walters v. Maricopa County*, 195 Ariz. 476, 481 (Ariz. Ct. App. 1999).

Plaintiff has brought his wrongful termination claim pursuant to §23-1501. As such, it appears that Defendants may be correct that the use of the word "may" in the University of Arizona Staff Dispute Resolution Procedure 406.0 made it a permissive administrative remedy and not mandatory as required for the §12-821.01(C) tolling provision.

However, *Walters* did not address the procedures set forth in the University of Arizona Dispute Resolution Procedure 406.0. *See Walters v. Maricopa County*, 195 Ariz. 476 (Ariz. Ct. App. 1999). Further, "Arizona case law solidly supports the … argument that the presence of the word "may" in an administrative procedure does not necessarily render the procedure permissive." *Mullenaux v. Graham County*, 207 Ariz. 1, 5 (Ariz. Ct. App. 2004)(holding that use of the word "may" in A.R.S. §11-356(B) did not render administrative review permissive and required a former employee to comply with the county grievance procedures prior to filing a civil suit). Additionally, there are several courts in Arizona that have interpreted the word "may" in an administrative procedure to refer to the option for review as opposed to making the use of the statute itself optional. *See Id*.

Further, the doctrine of equitable tolling has been applied in situations analogous to the present case. In *Kosman v. State*, 199 Ariz. 184 (Ariz. Ct. App. 2000), the Arizona Court of Appeals applied the doctrine of equitable tolling to a *pro se* prisoner who failed to timely file a notice of claim against the State because he first pursued his claim

---

[4] Arizona Revised Statute §38-532(H), authorizes a former employee to make a complaint to an independent personnel board, a community college district governing board, a school district governing board, or a city or town council if that employee believes that as a result of a disclosure of information of public concern a personnel action was taken against him.

through the prison's permissive administrative grievance procedure. *Kosman v. State*, 199 Ariz. 184, 186-187 (Ariz. Ct. App. 2000). The court in *Kosman* determined that plaintiff's tort claim did not require submission to the prison's grievance system, and thus was not subject to tolling pursuant to §12-821.01(C). However, the Court held that if plaintiff's assumption that exhaustion of administrative remedies was required was reasonable then his failure to timely file his notice of claim was excusable and is subject to equitable tolling. *Id*.

The Court finds that the doctrine of equitable tolling is appropriate in this case. After a review of the case law in conjunction with the factual issues in this case, the Court concludes that there is a lack of clarity in the law regarding whether use of the word "may" in UA Policy 406.0 renders those procedures permissive, and it was reasonable for the *pro se* Plaintiff to assume that he was required to complete the administrative review process pursuant to the University of Arizona Dispute Resolution Procedure 406.0 prior to filing a civil action. Thus, his failure to timely file his claim was excusable. Assuming Plaintiff's allegations are true, the administrative review process concluded on July 14, 2011. Since Plaintiff's Complaint was filed within one year of July 14, 2011, it is timely. Accordingly, the Court rejects that portion of Magistrate Judge Estrada's Report and Recommendation that recommended dismissing Counts One, Six and Seven as untimely.

*Failure to State a Claim*
*Count One – Wrongful Termination*

In Count One, Plaintiff alleges he was wrongfully terminated in violation of A.R.S. §23-1501(A)(3)(c)(ii). Pursuant to Arizona Employment Protection Act, A.R.S. § 23–1501(3)(c) (Supp.2006) ("AEPA"), an employee may bring a claim for wrongful termination if the employer terminated the employment relationship in violation of public policy. The AEPA enumerates the public policy violations that support a wrongful termination action in Arizona. *See* A.R.S. §23-1501. Plaintiff alleges

that his wrongful termination claim is supported by A.R.S. §23-1501(A)(3)(c)(ii), which provides:

> [t]he disclosure by the employee in a reasonable manner that the employee has information or a reasonable belief that the employer, or an employee of the employer, has violated, is violating or will violate the Constitution of Arizona or the statutes of this state to either the employer or a representative of the employer who the employee reasonably believes is in a managerial or supervisory position and has the authority to investigate the information provided by the employee and to take action to prevent further violations of the Constitution of Arizona or statutes of this state or an employee of a public body or political subdivision of this state or any agency of a public body or political subdivision.

A.R.S. §23-1501(A)(3)(c)(ii). Plaintiff alleges that he was terminated in retaliation for filing four disclosures. However, Plaintiff does not identify the contents of his disclosures. Plaintiff only makes one reference to the contents of his second disclosure. According to Plaintiff, his second disclosure related to a violation of federal law, the FLSA. However, there is no statutory public policy exception for whistleblowing associated with federal regulations. *See Galati v. America West Airlines, Inc.*, 205 Ariz. 290, 294 (Ariz. Ct. of App. 2003)(holding that §23-1501(A)(3)(c)(ii) does not support a claim for wrongful discharge based on a whistleblower disclosure related to federal law).

As such, A.R.S. §23-1501 does not support Plaintiff's claim for wrongful termination based on his disclosures related to a violation of federal law. Further, since the Complaint does not identify the contents of Plaintiff's other disclosures nor does it specify whether any of his disclosures were related to a violation of Arizona State law, Count One of Plaintiff's Complaint is dismissed with leave to amend.

*Count Two - FLSA*

In Count Two Plaintiff alleges that Defendants retaliated against him in violation of the FLSA. Pursuant to the Act's anti-retaliation provision, it is unlawful for an employer to discharge an employee because the employee "caused to be instituted any proceeding" related to the assertion of wage rights or "filed any complaint", regarding

1 wage rights. 29 U.S.C § 215(a)(3).

2 In order to demonstrate a *prima facie* case of retaliation pursuant to the FLSA, Plaintiff must show that (1) he engaged in a protected activity, (2) he suffered an adverse employment action, and (3) there was a causal link between his activity and the employment decision. *Cf. Raad v. Fairbanks North Star Borough School Dist.,* 323 F.3d 1185, 1196-1197 (9th Cir. 2009).

In order for a claim to "fall within the scope of the anti-retaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, -- U.S. --, 131 S.Ct. 1325, 1335 (2011). Magistrate Judge Estrada found that Plaintiff failed to allege that he placed his employers on notice that he was making a complaint pursuant to the FLSA. However, the Court disagrees with Magistrate Judge Estrada's conclusions.

Plaintiff asserts in his Complaint that on April 17, 2011, he submitted a disclosure of wrongful conduct to Thomas P. Miller. This disclosure alleged an abuse of authority, mismanagement, and a violation of law against Director Husman related to his failure to compensate Plaintiff for the 18 hours of overtime he accumulated.[5] Plaintiff further alleged that in his opinion that was a violation of the FLSA. Accepting Plaintiff's assertion of facts related to his April 17, 2011 disclosure as true, the Court finds that Plaintiff sufficiently placed his employer on notice that he was filing a complaint related to his rights pursuant to the FLSA. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, -- U.S. --, 131 S.Ct. 1325, 1335 (2011).

As such, Plaintiff has sufficiently alleged that he was engaged in protected activity by filing a complaint related to his overtime compensation. Since Plaintiff alleges that he was terminated from employment, he has also sufficiently alleged that he suffered an

---

[5] According to §207(a)(2)(C) of the FLSA, any employee that works in addition to 40 hours in one week is entitled to compensation for his employment in excess of 40 hours at a "rate not less than one and one half times the regular rate at which he is employed." 29 U.S.C. §207(a)(2)(C).

- 12 -

adverse employment action. However, the Court finds that Plaintiff has failed to allege or provide any factual allegations to demonstrate that his termination was linked to the filing of his complaint related to his overtime compensation.

A reading of Plaintiff's Complaint appears to allege that Director Husman initiated a retaliatory investigation against Plaintiff for filing a whistleblower complaint against him. Plaintiff has not indicated in his Complaint the contents of his whistleblower complaint or even alleged that it was related to wage rights.[6] As such, his Complaint fails to sufficiently allege that he was retaliated against by Director Husman as a result of a complaint related to wage rights when Director Husman began investigating Plaintiff's use of overtime.

Plaintiff acknowledges that he refused to meet with Director Husman to discuss his use of overtime and as a result he was terminated for insubordination. Plaintiff asserts in conclusory form that he was terminated by Director Husman as a result of his filing. However, Plaintiff does not allege that Director Husman was even aware of his filing, which related to wage issues, at the time he was terminated or that Director Husman or any other Defendant retaliated against him by terminating his employment due to his filing related to wage issues.[7]

Additionally, Plaintiff has failed to allege how the actions of the other Defendants correlated to Director Husman's decision to terminate Plaintiff's employment allegedly in retaliation for Plaintiff's filing of a complaint related to his wage issues. Plaintiff's Complaint is conclusory and there are no factual assertions alleged in Plaintiff's

---

[6] Plaintiff attached as Exhibit D to his Objections to the Report and Recommendation a copy of his email related to his whistleblower complaint. His complaint appears to relate to Director Husman's refusal to share the work schedules of Plaintiff's co-workers with Plaintiff that Plaintiff alleged were being compensated for a full 40 hour week when they were not working a full 40 hours. In response Defendant Thomas P. Miller asserted that his allegations that his supervisor refused to share the work schedules of his co-workers with Plaintiff rose to the level of a matter of public concern warranting whistleblower protection. (Doc. 23-4).

[7] Moreover, Plaintiff specifically alleges that he was terminated for insubordination for failing to meet with Director Husman to discuss his use of overtime.

Complaint to support Plaintiff's claim that he was retaliated against in violation of the Fair Labor Standards Act. However, since it is possible that Plaintiff can amend this claim, the Court grants Plaintiff leave to amend.

*Counts Three to Five – First and Fourteenth Amendment Claims*

Magistrate Judge Estrada's Report and Recommendation recommended dismissing Counts Three through Five of Plaintiff's Complaint for failure to state a valid claim. However, Magistrate Judge Estrada also recommended granting Plaintiff leave to file an amended complaint. Plaintiff has not objected to Magistrate Judge Estrada's recommendation related to Counts Three through Five and has conceded that his Complaint was insufficient in certain respects. Further, Defendants have not objected to granting Plaintiff leave to amend his Complaint. As such, the Court adopts the Magistrate Judge's recommendation regarding Counts Three through Five of Plaintiff's Complaint.

*Count Six – Breach of Implied Covenant of Good Faith*

In Count Six Plaintiff alleges that Defendants breached the covenant of good faith and fair dealing. Pursuant to Arizona law, an employment relationship is contractual in nature. A.R.S. §23-1501(A)(1). "The law implies a covenant of good faith and fair dealing in every contract." *McAlister v. Citibank (Arizona), a Subsidiary of Citicorp*, 171 Ariz. 207, 213 (Ariz. Ct. of App. 1992). "This implied covenant prevents either party from acting to 'impair the right of the other [to] receive the benefits which flow from their agreement'" *Id. quoting Rawlings v. Apodaca*, 151 Ariz. 149, 153 (Ariz. 1986). While this implied covenant is normally remedied by an action on contract, it can also provide the basis for imposing tort damages. *McAlister v. Citibank (Arizona), a Subsidiary of Citicorp*, 171 Ariz. 207, 213 (Ariz. Ct. of App. 1992). The contract at issue in the case at bar is Plaintiff's at-will employment contract with the University of Arizona. In his Complaint, Plaintiff alleges a tortious breach of the implied covenant of

1 good faith and fair dealing related to that contract.

2 However, in Arizona, a "tortious 'bad faith' cause of action arising out of a breach of an employment agreement, when no public policy is violated, is prohibited." *Harris v. Superior Court of Arizona ex rel, County of Maricopa*, 278 Fed. Appx. 719, 721 (9th Cir. 2008) *citing Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 198 (Ariz. Ct. of App. 1994). Since the Court has already determined that Plaintiff failed to sufficiently plead that he was terminated as retaliation for filing a complaint in violation of Arizona public policy, his cause of action for tortious bad faith in prohibited. *See Id*.  Further, Plaintiff has alleged that he was terminated from his employment for insubordination based on his failure to discuss his use of overtime with Director Husman. Assuming the allegations in Plaintiff's Complaint are true, it appears he was fired for cause. As such, Count Six is dismissed with leave to amend.

*Count Seven - Tortious Interference with a Contractual Relationship*

In Count Seven Plaintiff alleges that Defendant interfered with his contractual relationship with the University of Arizona.  "Tort liability may be imposed upon a defendant who intentionally and improperly interferes with the plaintiff's rights under a contract with another if the interference causes the plaintiff to lose a right under the contract." *Snow v. Western Sav. & Loan Ass'n,* 152 Ariz. 27, 730 P.2d 204, 211 (Ariz.1986) (internal citations omitted). The five elements of the tort of interference with an employment contract are: (1) the existence of a contractual relationship or business expectancy between plaintiff and a third party; (2) defendant's knowledge that the contract exists; (3) defendant's intentional interference with the contract, which causes the third party to breach the contract; (4) defendant acted improperly; and (5) damage resulted to the plaintiff. *Bernstein v. Aetna Life & Cas.,* 843 F.2d 359, 366 (9th Cir. 1988) *citing Antwerp Diamond Exch. V. Better Business Bureau of Maricopa County,* 130 Ariz. 523, 530, 637 P.2d 733, 739-40 (1981) (for the first four elements); *Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 710 P.2d 1025 (1985).

1  Plaintiff alleges that the Defendants failed to adhere to University of Arizona
2 policies and as a result they interfered with his contractual relationship with the
3 University of Arizona. Plaintiff concludes without factual support that the Defendants
4 colluded with each other to condone Plaintiff's termination. He alleges that the
5 Defendants falsified his time records, interfered with his disclosures and denied him
6 confidentiality during his disclosure investigations. While Plaintiff alleges the
7 Defendants falsified his time records, he does not allege anywhere in his Complaint that
8 the falsification of his time records resulted in his termination.

9  There is no allegation in his Complaint that Director Husman terminated Plaintiff
10 due to the actions of the other four Defendants. Plaintiff's Complaint is clear that he was
11 terminated due to his own actions in refusing to discuss his use of overtime with Director
12 Husman. Regardless of whether Plaintiff was entitled to whistleblower protection related
13 to his initial disclosure regarding Director Husman or not, the fact that his plea for
14 whistleblower protection was denied does not establish that the Defendants intentionally
15 interfered with his contract. There is nothing in the Complaint to establish that the
16 Defendants did anything other than act within the scope of their authority in assessing
17 Plaintiff's disclosures and making a determination that the Defendant disagreed with.

18  Since the Defendants are all employees of the University of Arizona and according
19 to the Complaint were acting within the scope of their authority in assessing Plaintiff's
20 disclosures, Defendants cannot be liable for interfering with Plaintiff's contractual
21 relationship. *See Barrow v. Ariz. Bd. of Regents*, 158 Ariz. 71, 78, 761 (Ariz, Ct. of App.
22 1988) (an individual defendant that acts within the scope of his authority for Defendant's
23 employer, could not interfere with their own contract).

24  As drafted, Plaintiff has failed to sufficiently plead a claim of tortious interference
25 with a contractual relationship. However, since Plaintiff may be able to sufficiently
26 amend his Complaint, the Court will grant Plaintiff leave to amend.

27

28 *Leave to Amend*

Within 30 days, Plaintiff may submit a first amended complaint consistent with the terms of this Order.  Plaintiff must clearly designate on the face of the document that it is the "First Amended Complaint."  The first amended complaint must be retyped or rewritten in its entirety and may not incorporate any part of the original Complaint by reference.  Additionally Plaintiff's complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Rule 8(a), Fed. R. Civ. P.

Plaintiff's initial Complaint contained numbered sections.  However, the sentences are disjointed, which makes it difficult to read and each section contains multiple allegations.  Plaintiff's first amended complaint must set forth all his claims in numbered paragraphs that should be limited to a single set of circumstances.  Fed. R. Civ. P. 10(b). "Each claim . . . shall be stated in a separate count . . . whenever a separation facilitates the clear presentation of the matters set forth." *Id.*   Failure to set forth claims in such a manner places the onus on the court to decipher which, if any, facts support which claims, as well as to determine whether a plaintiff is entitled to the relief sought. *Haynes v. Anderson & Strudwick, Inc.*, 508 F.Supp. 1303 (D.C.Va. 1981).  Enforcement of this rule is discretionary with the Court, but such enforcement is appropriate where it is necessary to facilitate a clear presentation of the claims. *See*, *Benoit v. Ocwen Financial Corp., Inc.*, 960 F.Supp. 287 (S.D.Fla. 1997), affirmed 162 F.3d 1177 (compliance with rule required where allegations were so confusing and conclusory, claims were commingled, and impossible to determine nature of claims).

Further, Plaintiff is reminded that conclusory allegations are not facts and he must plead actual facts that raise his right to relief above the speculative level. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Additionally, Plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-372, 377 (1976).

Finally, Plaintiff is reminded that a first amended complaint supersedes the original complaint. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990). After amendment, the Court will treat his original complaint as nonexistent. *Ferdik*, 963 F.2d at 1262. Any cause of action that was raised in the original complaint is waived if it is not raised in a first amended complaint. *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).

*Summary Judgment Motion and Motion for Judgment on the Pleadings*

On February 19, 2013, Plaintiff filed a Motion for Summary Judgment on Counts One, Two, Six and Seven. (Doc. 15). Then, on May 14, 2013, Plaintiff filed a Motion for Judgment on the Pleadings. (Doc. 18). However, in light of the Court's dismissal of Plaintiff's Complaint with leave to amend, his Motion for Summary Judgment and his Motion for Judgment on the Pleadings are denied.

Accordingly, IT IS ORDERED:

1. The Report and Recommendation, (Doc. 22), is ADOPTED IN PART, MODIFIED IN PART, and REJECTED IN PART.

2. Defendants' Motion to Dismiss, (Doc. 3) is GRANTED IN PART and DENIED IN PART.

3. Defendant Arizona Board of Regents is dismissed from the federal claims, Counts Two, Three, Four, and Five of Plaintiff's Complaint, with prejudice.

4. Plaintiff's Complaint is dismissed for failure to state a claim. Plaintiff is granted leave to file a First Amended Complaint on or before October 24, 2013 consistent with the terms of this Order.

5. If Plaintiff fails to file a First Amended Complaint on or before October 24, 2013, the Clerk of Court must, without further notice, enter a judgment dismissing this case with prejudice.

     6.     Plaintiff's Motion for Summary Judgment, (Doc. 15), is DENIED AS MOOT.

     7.     Plaintiff's Motion for Judgment on the Pleadings, (Doc. 18), is DENIED AS MOOT.

Dated this 24th day of September, 2013.

_____
Cindy K. Jorgenson
United States District Judge