IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dale Gorney,<br><br>    Plaintiff,<br><br>v.<br><br>Arizona Board of Regents, et al.,<br><br>    Defendants. | No. CV-13-00023-TUC-CKJ (CRP)<br><br>**REPORT & RECOMMENDATION** |

  Pending before the Court is Defendants' Motion to Dismiss First Amended Complaint (Doc. 33). Plaintiff has filed a Response (Doc. 34) and Defendants have filed a Reply (Doc. 37). For the following reasons, the Magistrate Judge recommends that the District Court, after its independent review, grant Defendants' Motion.

**FACTUAL & PROCEDURAL BACKGROUND**

  Plaintiff Gorney, who is proceeding *pro se*, alleges that he was wrongly terminated from his employment at the University of Arizona ("UA") after he made three "disclosures" of wrongful employee conduct and asserted rights under the Arizona Board of Regents whistleblower policy ("ABOR Policy 6-914"). Gorney originally filed this action in state court and Defendants filed a notice of removal. Thereafter, upon Defendant's motion for dismissal, the District Court dismissed Gorney's original complaint with leave to amend. (Doc. 25). On October 23, 2013, Gorney filed his First

Amended Complaint ("FAC") (Doc. 32). Gorney names as Defendants: the Arizona Board of Regents; Steve Husman, Director of the UA Tucson Area Agricultural Center; Jacqueline Lee Mok, UA Senior Vice President and Chief of Staff, Office of the President; Thomas P. Miller, UA Associate Provost of Faculty Affairs; and Allison Vaillancourt, UA Vice President, Human Resources. (FAC, p. 6 & ¶11). Gorney raises the following claims: (1) wrongful termination in violation of public policy; (2) violation of 42 U.SC. § 1983; (3) retaliation under the Fair Labor Standards Act ("FLSA"); (4) breach of implied-in-law covenant of good faith and fair dealing; and (5) tortious interference with contract. Gorney requests reinstatement of employment; an employment contract; backpay; reimbursement for money spent and early withdrawals from his IRA due to his termination; general damages for emotional distress caused from stress due to financial repercussions of his termination; and punitive damages. (FAC, ¶¶29-32).

Defendants seek dismissal of Gorney's FAC for failure to state a claim, arguing among other things, that Gorney's failure to appeal from the University's decision discharging him from employment by filing an action in Superior Court under the Arizona Administrative Review Act, ARS. § 12-901 *et seq.*, precludes him from filing the claims raised in the FAC.

**STANDARD**

To defeat a motion to dismiss, the "non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009). The "'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face;' that is, plaintiff must 'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Telesaurus VPC, LLC. v. Power,* 623 F.3d 998, 1003 (9th Cir. 2010) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint…" does not apply

1    to legal conclusions. *Iqbal,* 556 U.S. at 678.

2          Usually, the court may not look be beyond the plaintiff's complaint in resolving a
3    motion to dismiss. However, the court may consider documents attached to the
4    complaint as well as "any documents referred to or 'whose contents are alleged in a
5    complaint and whose authenticity no party questions.'" *McGrath v. Scott,* 250 F.Supp.
6    2d 1218, 1221 (D. Ariz. 2003). (quoting *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.
7    1994), *overruled on other grounds by Galbraith v. County of Santa Clara,* 307 F.3d 1119
8    (9th Cir. 2002)); *see also United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003).
9    Moreover, "'even if the plaintiff[']s complaint does not explicitly refer to' a document, 'a
10   district court ruling on a motion to dismiss may consider a document the authenticity of
11   which is not contested, and upon which the plaintiff[']s complaint necessarily relies'
12   because this prevents 'plaintiffs from surviving a Rule 12(b)(6) motion by deliberately
13   omitting references to documents upon which their claims are based[.]'" *McGrath,* 250
14   F.Supp. 2d at 1221 ((quoting *Parrino v. FHP, Inc.,* 146 F.3d 699, 705-06 (9th Cir. 1998),
15   *superseded on other grounds by* 28 U.S.C. §1453(b)). Gorney has attached various
16   documents to his FAC, which the Court may properly consider on a motion to dismiss.
17   *See Ritchie,* 342 F.3d at 908. Additionally, Defendants have attached the following
18   documents to their Response: Staff Dispute Resolution Procedure, Policy 406.0
19   (Response, Exh. A); June 22, 2012 Hearing Report ("Hearing Decision") (Response, Exh.
20   B); July 13, 2012 Letter from Defendant Mok accepting the Hearing Decision
21   recommendations (Response, Exh. C); and July 26, 2012 denial of Gorney's request for
22   reconsideration (Response, Exh. D). Gorney alleges that he was wrongfully terminated
23   and retaliated against. Gorney also alleges that he had a post-termination review hearing
24   and that Defendant Mok violated his constitutional rights by accepting the Hearing
25   Decision and denying his request for reconsideration. (*See e.g.* FAC, ¶¶23.4, 25.1-25.3).
26   The allegations in Gorney's FAC necessarily rely on the Hearing Decision and stated
27   reasons for his termination. Further, neither party has contested the authenticity of the
28   documents submitted. The documents are properly considered in resolving Defendants'

Motion to Dismiss.

**DISCUSSION**

**GENERAL FACTUAL ALLEGATIONS.**  On March 18, 2011, Gorney complained that his supervisor would not share co-workers' schedules with him and was retaliating against him in scheduling because Gorney had complained that a co-worker had not been working a full 40-hour week despite being been paid to do so. (*See* FAC, Exh. 5 (April 18, 2011 Letter)); *see also* FAC ¶6).  Defendant Miller informed Gorney that his complaint did not rise to the level of a matter of public concern under ABOR Policy 6-914.[1]  (FAC, Exh. 5 (April 18, 2011 Letter)).  Defendant Miller advised that Gorney should bring his concerns regarding improprieties related to staff members in his department to an appropriate supervisor.  (*Id.*).  Defendant Miller also noted: "It appears that you have refused to meet with your supervisor and that you also have been unwilling to share your concerns with members of Human Resources who have demonstrated a willingness to assist you." (*Id.*)

On April 17, 2011, Gorney complained that Defendant Husman violated the FLSA by denying Gorney overtime pay.  (FAC, ¶6; FAC, Exh. 5 (April 24, 2011 Letter)).  Again, Defendant Miller informed Gorney that the matter did not rise to a matter of public concern:  "Although you have raised concerns about your own employment and decisions related to your own employment, these concerns are personal to you, and do not constitute matters of public concern as contemplated by state law and the ABOR Whistleblower policy…."  (FAC, Exh. 5 (April 24, 2011 Letter)).  Defendant Miller advised Gorney to direct his complaints and concerns to his supervisors or their

---

[1] Defendant Miller informed Gorney that under ABOR Policy 6-914, Gorney "must first make a good faith disclosure of alleged wrongful conduct to a public body or to a designated University officer on a '*matter of public concern*.'  The subject of such a disclosure must go beyond personal grievances and internal policies of the University; must fairly relate to a matter of political, social or other concern to the community, rather than merely to the individual who makes the statement; and must be helpful to the community in evaluating the performance of public institutions."  (FAC, Exh. 5 (April 18, 2011 Letter)) (emphasis in original).  Defendant Miller wrote Gorney that he did "not find the allegations that you have made—that your supervisor refuses to provide work schedules of other employees to you—to rise to the level of a [sic] 'a matter of public concern.'"  (*Id.*).

- 4 -

supervisors under applicable employee policies. (*Id.*). He also advised that "just because you have lodged complaints with University officials, you are not excused from dealing with your supervisors and responding to reasonable requests by them to meet to discuss either your concerns or theirs." (*Id.*).

On April 26, 2011, Gorney alleged that UA employees, including Defendants Husman and Nelson, were using university facilities to repair their personal vehicles. (FAC, ¶6; FAC Exh. 5 (April 28, 2011 Letter)). Defendant Miller advised that Gorney's complaint did not fall under ABOR Policy 6-914 because it did not rise to the level of a matter of public concern. (FAC, Exh. 5 (April 28, 2011 Letter)). However, because such conduct may violate the University's Misuse of University Assets Policy, Defendant Miller referred the matter to the Senior Vice President and Chief Financial Officer, Business Affairs. (*Id.*).

Gorney claimed overtime incurred in drafting the disclosures. (FAC, ¶¶8, 10.18, 23.1). Defendant Husman, Gorney's supervisor, "required Mr. Gorney on more than one occasion to meet personally with him to discuss overtime and extra work hours…related to the disclosure(s)." (FAC, ¶23.2)). Claiming the disclosures were confidential, Gorney refused to meet with Defendant Husman. (FAC, ¶¶8, 23.2). Gorney was given a Written Warning, placed on Disciplinary Probation, and given a pre-discharge notice for his repeated refusal to meet with Defendant Husman to discuss his overtime claims. (*Id; see also* FAC, ¶8 (Gorney refused to meet with Defendant Husman while on disciplinary probation)). Gorney also refused to meet with Defendant Husman for the disciplinary probation and pre-discharge meetings, because Gorney claimed that such "directives to meet with him were illegal." (FAC, ¶23.4). On May 25, 2011, Defendant Husman terminated Gorney for cause. (FAC, ¶24.2).

Gorney requested a post-termination hearing under University Policy 406.0. (FAC, ¶24.2). A hearing was held on May 15, 2012, and on June 22, 2012, the review panel issued the Hearing Decision upholding Gorney's termination. (FAC, ¶25; *see also* Defendants' Motion, Exh. B). On July 13, 2012, Defendant Mok accepted the panel's

1  recommendation denying Gorney's appeal. (FAC, ¶ 25.1; *see* also Defendants' Motion,
2  Exh. C). Gorney requested reconsideration of the decision, and on July 26, 2012,
3  Defendant Mok affirmed her decision. (FAC, ¶25.3; *see also* Defendants' Motion, Exh.
4  D). In her letter denying Gorney's request for reconsideration, Defendant Mok advised
5  that he had the right to appeal her decision to the Superior Court pursuant to A.R.S. §12-
6  901, Arizona's Administrative Review Act, and that such appeal must be filed within 35
7  days from the date on which Gorney was served with the decision denying his request for
8  reconsideration. (Defendants' Motion, Exh. D).

9  It undisputed that Gorney did not seek an appeal pursuant A.R.S. §12-901.
10 Instead, Gorney filed a separate complaint in state court which Defendants removed to
11 this Court.

12 **FAILURE TO APPEAL UNDER THE ARIZONA REVIEW ACT.** "The Arizona Board of
13 Regents is an agency subject to Arizona's Administrative Review Act." *Ernst v. Arizona*
14 *Bd. of Regents,* 119 Ariz. 129, 131, 579 P.2d 1099, 1101 (1978) (citation omitted); *see*
15 *also Carley v. Arizona Board of Regents,* 153 Ariz. 461, 727 P.2d 1099 (App. 1987)
16 (state court reviewed appeal of employment-related decision under the Administrative
17 Review Act). It is well-settled that "[w]hen a state agency acts in a judicial capacity to
18 resolve disputed issues of fact and law properly before it, and when the parties have had
19 an adequate opportunity to litigate those issues, federal courts must give the state
20 agency's fact-finding and legal determinations the same preclusive effect to which it
21 would be entitled in that state's courts." *Olson v. Morris,* 188 F.3d 1083, 1086 (9th Cir.
22 1999) (citing *University of Tennessee v. Elliott,* 478 U.S. 788, 798-99, (1986); *Guild*
23 *Wineries and Distilleries v. Whitehall Co.,* 853 F.2d 755, 758 (9th Cir.1988)). However,
24 the district court must first

25 > *independently* assess the adequacy of the state's administrative forum. "The threshold inquiry ... is whether the state administrative proceeding was
26 > conducted with sufficient safeguards to be equated with a state court judgment. This requires careful review of the administrative record to
27 > ensure that, at a minimum, it meets the state's own criteria necessary to require a court of that state to give preclusive effect to the state agency's
28 > decisions ... [A]lthough a federal court should ordinarily give preclusive effect when the state court would do so, there may be occasions where a

- 6 -

> state court would give preclusive effect to an administrative decision that failed to meet the minimum criteria set down [for federal courts] in [*United States v.*] *Utah Construction* [*& Mining Co.,* 384 U.S. 394 (1966)]."

*Id.* (citation omitted). The *Utah Construction* criteria requires that: (1) the administrative agency act in a judicial capacity; (2) that the agency resolve disputed issues of fact properly before it; and (3) the parties have an adequate opportunity to litigate. *Utah Construction,* 384 U.S. at 422. Here, Gorney appeared before a hearing panel consisting of three members in addition to a Hearing Officer. (*See* Defendants', Exh. B). Gorney admitted 44 exhibits into evidence, made an opening statement, examined and cross-examined witnesses, called no witnesses but testified in his own behalf, and made a closing argument to the panel. (*Id.*). The panel and Hearing Officer issued a Hearing Report setting forth: a Hearing Summary; a Statement of the University Disciplinary Action Policy; Background of the Dispute; Findings of Fact; Conclusions; and Panel Recommendations. (*Id.*) The Hearing Decision also reflects that Gorney requested: "many forms of compensation and relief from the University, including reinstatement, back pay to June 1, 2011 with interest thereon, a written employment contract, liquidated damages under the Fair Labor Standards Act and compensation for penalties associated with early withdrawal of retirement funds."[2] (*Id.* at p. 4). After the Hearing Decision issued, Gorney was permitted to request reconsideration of the decision (Defendants' Motion, Exh. C), which he did, and which was denied. (Motion, Exh. D). In sum, the Court finds that the administrative hearing met the criteria set out in *Utah Construction*.

The record is clear that Gorney was informed of his right to file an appeal with the state superior court pursuant to Arizona's Administrative Review Act, A.R.S. § 12-901, *et seq.*, within 35 days from receipt of Defendant Mok's decision denying his request for reconsideration, (*see* Defendants' Motion, Exh. D), and Gorney did not do so.

"Under Arizona law, a party's failure to appeal a final administrative decision makes that decision final and *res judicata*." *Olson,* 188 F.3d at 1086 (citations omitted).

---

[2] The relief Gorney requested during the administrative proceeding is similar to the relief Gorney requests in his FAC. (*See* FAC, ¶¶29-32).

- 7 -

1   "Under the doctrine of *res judicata*, a judgment on the merits in a prior suit involving the
2   same parties or their privies bars a second suit based on the same cause of action." *Id.*
3   (citing *Gilbert v. Board of Medical Examiners of the State of Arizona,* 155 Ariz. 169, 174,
4   745 P.2d 617 (1987), *superseded by statute on other grounds as stated in Goodman v.*
5   *Samaritan Health Sys.,* 195 Ariz. 502, 508 n.7, 990 P.2d 1061, 1067 n.7 (App. 1999)).
6   Further, "[t]his doctrine binds the same party standing in the same capacity in subsequent
7   litigation on the same cause of action, not only upon facts actually litigated but also upon
8   those points that might have been litigated." *Id.* Moreover, "[i]In Arizona, the failure to
9   seek judicial review of an administrative order precludes collateral attack of the order in a
10  separate complaint. If no timely appeal is taken, the [administrative] decision…is
11  'conclusively presumed to be just, reasonable and lawful.'" *Id.* (quoting *Gilbert*, 155
12  Ariz. at 176, 745 P.2d 617); *see also Gilbert,* 155 Ariz. At 175; 745 P.2d at 623 ("if the
13  propriety of the [board's] revocation order has been finally adjudicated, its propriety is
14  conclusively established for purposes of any subsequent suit between [the board and the
15  plaintiff]…even if that lawsuit involves a different claim."). This principle applies even
16  to alleged constitutional errors that might have been corrected on proper application to
17  the court which has jurisdiction of the appeal. *Olson,* 188 F.3d. at 1086; *Dommisse v.*
18  *Napolitano,* 474 F.Supp. 2d 1121 (D. Ariz. 2007)

19        Additionally, under the doctrine of collateral estoppel, "a party may also be
20  precluded from relitigating an issue against someone who was not a party to the original
21  action, provided there was a full and fair opportunity to litigate the issue in the original
22  action." *Gilbert,* 155 Ariz. at 175, 745 P.2d at 176. Accordingly, a plaintiff is precluded
23  from filing an action against defendants who were not named parties to the administrative
24  action where the pivotal issues have already been litigated and decided against the
25  plaintiff during the administrative proceeding, and where the plaintiff failed to appeal the
26  administrative proceedings. *See e.g. Dommisse,* 474 F.Supp. 2d 1121; *Gilbert,* 155 Ariz.
27  at 175, 745 P.2d at 617; *cf., Bridgestone/Firestone N. Amer. v. Naranjo,* 206 Ariz. 447,
28  452, 79 P.3d 1206, 1211 (App. 2003).

Defendants argue that because Gorney did not appeal the administrative decision, he is precluded from pursuing his present claims. That argument is well-taken.

**WRONGFUL TERMINATION.** Gorney alleges that he was wrongfully terminated in violation of University policies and procedures and in violation of Arizona's whistleblower statute, 23 A.R.S. §23-1501, *et seq.* (FAC, ¶¶10-10.19). Gorney's allegations refer to the three disclosures he made, his assertion that he was entitled to overtime under the FLSA for the time spent preparing the disclosures, and his assertion that he had a right to refuse to meet with Defendant Husman. (*See id.*).

The Hearing Decision sets out a detailed discussion concerning Gorney's disclosures, his claims for overtime, and his refusal to meet with Defendant Husman even though he was directed to do so. The parties' respective positions were described as follows:

> The College asserts that Gorney was directed to meet with supervision on eight separate occasions to discuss unapproved overtime claims and his insistence on working a non-standard work schedule. Gorney admits that he refused to meet with supervision in response to each of the eight requests. Gorney asserts that the information sought by supervision concerning overtime claims and work schedule is "confidential" pursuant to the provisions of Policy 6-914. Also, on several occasions Gorney took the position that the requested face-to-face meetings would be a waste of time.

(Response, Exh. B, p. 4). The panel's findings included that: supervisory employees, including Defendant Nelson, did not authorize in advance Gorney working overtime; Gorney repeatedly refused requests to meet with his supervisor; the information which supervision wished to obtain and discuss with Gorney was not "confidential" for purposes of the University whistleblower protection policy or otherwise; the meeting requests were reasonably necessary for supervision to effectively direct the work force, to assign work and to determine the extent and schedule of the College's business operations; and Gorney engaged in insubordination by repeatedly failing and refusing to comply with a supervisor's lawful and reasonable instructions and directives. (*Id.*). Therefore, the panel concluded that:

> Gorney committed repeated and serious violations of University rules and policies. He committed repeated acts of insubordination over the period of

several months, and continued to work overtime hours without prior supervisory approval despite being warned about the serious consequences thereof. Gorney has not presented nor proven any meritorious defenses to the misconduct and policy violations presented and proven by the College.

(*Id.* at p. 5).

As Defendants correctly point out, if Gorney wished to attack the termination decision, he had to appeal that decision by way of the Administrative Review Act, which he did not do. Thus, the determination of the existence of sufficient grounds to terminate Gorney is conclusively established by the unappealed Hearing Decision and Gorney is precluded from challenging that decision now. *See e.g. Olson,* 188 F.3d 1083; *Dommisse,* 474 F.Supp.2d 1121; *Guertin v. Pinal County,* 178 Ariz. 610, 875 P.2d at 843 (App. 1994); *Gilbert,* 155 Ariz. 169, 745 P.2d 617. Therefore, Gorney fails to state a claim of wrongful termination.

**42 U.S.C. § 1983.** Gorney essentially recasts his wrongful termination claim as a claim that Defendants Mok, Miller, Husman, and Vaillancourt violated his rights under the First Amendment and the Fourteenth Amendment Due Process Clause (FAC, ¶11). For example, he claims that his disclosures fell within the whistleblower policy and statute and he asserts that Defendants retaliated against him and violated his constitutional rights by, *inter alia,* not following ABOR Policy 6-914, by failing to authorize overtime he incurred in making the disclosures, and by terminating his employment. (FAC, ¶¶11-25.3). Gorney also claims that in retaliation for his complaint filed with the Department of Labor regarding overtime violations, Defendant Vaillancourt delayed his post-termination review hearing six months and failed to inform him he was eligible for reemployment with the UA. (FAC, ¶¶ 24.3-23.4). Gorney further claims that Defendant Mok violated his constitutional rights by "collaborating" with the hearing review panel, denying him access to ABOR Policy 6-914, condoning Defendant Vaillancourt's delay of the post-termination review hearing, and denying Gorney's request for reconsideration. (FAC, ¶¶25-25.3).

Failure to appeal under the Administrative Review Act can preclude the later filing of constitutional claims in a separate action. *See Dommisse,* 474 F.Supp.2d. at 1128. The issues Gorney raises here could have been brought before the hearing panel and/or on appeal before the state court. *See e.g. Olson,* 188 F.3d 1083 (*res judicata* barred section 1983 action against members of the Arizona Board of Psychologist Examiners); *Dommisse,* 474 F.Supp.2d at 1128 (plaintiff's failure to appeal barred constitutional claims). Gorney's failure to properly appeal the Hearing Decision precludes his instant claims under 42 U.S.C. § 1983.

**FLSA OVERTIME VIOLATION.** Gorney claims Defendants' violation of ABOR Policy 9-614, in failing to accord his disclosures whistleblower protection, in turn, resulted in retaliation against him in violation of the FLSA. (FAC, ¶¶26.1-26.5). In his Response to Defendants' Motion, Gorney argues that Defendant ABOR waived Eleventh Amendment immunity when it removed this suit to federal court. (Response, p. 2). In dismissing Gorney's original complaint, the District Court rejected Gorney's theory that Defendant ABOR waived its immunity by removing this action and, instead, held that the Eleventh Amendment precludes Gorney's suit against Defendant ABOR under the FLSA. (Doc. 25, p. 6). Accordingly, Gorney cannot state a FLSA violation claim against Defendant ABOR.

Moreover, with regard to the other Defendants, the FLSA issue was raised before the hearing panel. Gorney requested damages under the FLSA and testimony was taken and findings were made regarding Gorney's overtime claims. (*See* Response, Exh. B, pp. 3-4). Clearly, Gorney had the opportunity to raise his FLSA claim before the hearing panel and on appeal before the state court had he sought such appeal in accordance with the Administrative Review Act. Therefore, the Hearing Decision is conclusive as to Gorney's FSLA claim, and Gorney's failure to file an appeal under the Administrative Review Act precludes any further review. *See e.g. Olson,* 188 F.3d 1083.

**BREACH OF IMPLIED-IN-LAW COVENANT OF GOOD FAITH AND FAIR DEALING.** Gorney asserts that this claim "sounds in tort." (FAC, ¶ 15). When dismissing Gorney's original

1    complaint, the District Court pointed out that "in Arizona, a 'tortious []bad faith[] cause
2    of action arising out of a breach of employment agreement, when no public policy is
3    violated, is prohibited.' *Harris v. Superior Court of Arizona ex rel, County of Maricopa,*
4    278 F.3d Appx. 719, 721 (9th Cir. 2008) *citing Nelson v. Phoenix Resort Corp.*, 181 Ariz.
5    188, 198 (Ariz. Ct. of App. 1994)." (Doc. 25, p. 15).  As discussed *supra* the existence
6    of sufficient grounds to terminate Gorney is conclusively established by the unappealed
7    Hearing Decision.  Therefore, Gorney is precluded from alleging in this action that he
8    was terminated in violation of public policy. *See e.g. Guertin,* 178 Ariz. at 612, 875 P.2d
9    at 845 (plaintiff who failed to appeal employment termination decision under the
10   Administrative Review Act was precluded from filing a separate action alleging, *inter*
11   *alia,* breach of covenant of good faith and fair dealing).

12   **TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP.**  Gorney alleges that
13   Defendants Mok, Miller, Vaillancourt, and Husman acted outside the scope of their
14   authority to tortiously interfere with his contractual employment relationship with the
15   University. (FAC, ¶28).  He further alleges that Defendants "collaborat[ed] with each
16   other by refusing [him] access to policy 6-914 and condoning [his] unlawful termination
17   from employment." (*Id.*).

18       When dismissing Gorney's claim of tortious interference with contractual
19   relationship alleged in his original complaint, the District Court pointed out that because
20   "the Defendants are all employees of the University and according to the Complaint were
21   acting within the scope of their authority in assessing Plaintiff's disclosures, Defendants
22   cannot be liable for interfering with Plaintiff's contractual relationship. *See Barrow v.*
23   *Ariz. Bd. of Regents,* 158 Ariz. 71, 78…(Ariz. Ct. of App. 1988) (an individual defendant
24   that acts within the scope of his authority for Defendant's employer, could not interfere
25   with their own contract.)." (Doc. 25, p. 16).  Defendants point out that although Gorney
26   now alleges that Defendants "acted outside the scope of their authority…" (FAC, ¶28),
27   Gorney supplies no factual allegations to support such a claim. (Motion, p. 11). Gorney
28   counters that Defendants acted outside the scope their authority  by violating University

- 12 -

1 policies and rules, and state and federal laws. However, Gorney does not allege facts plausibly suggesting that Defendants were not acting as University employees when they allegedly violated such policies and laws or when they terminated him for insubordination. Therefore, Gorney fails to state a claim for tortious interference. (*See* Doc. 25, p, 16).

Moreover, inherent in Gorney's claim is that he was unlawfully terminated from employment. Again, the fact that there were sufficient grounds for Gorney's termination is conclusively established. *See e.g. Guertin,* 178 Ariz. 610, 875 P.2d 841 (plaintiff who failed to appeal decision under the Administrative Review Act was precluded from filing separate action alleging, *inter alia,* tortious interference with contract).

**CONCLUSION**

To seek redress for the claims raised in the instant FAC, Gorney was required to file an appeal of the termination decision pursuant to the Administrative Review Act, which he did not do. As such, Gorney is now precluded from raising his claims in a separate lawsuit. Moreover, in light of the preclusive effect of the Hearing Decision, Gorney's FAC should be dismissed without leave to amend. *See e.g. Cook, Perkiss and Liehe, Inc. v. Northern Calif. Collection Serv., Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (court need not grant leave to amend where it determines that the pleading could not possibly be cured by the allegation of other facts).

**RECOMMENDATION**

For the following reasons the Magistrate Judge recommends that the District Court, after its independent review, grant Defendants' Motion to Dismiss (Doc. 33) and dismiss the First Amended Complaint without leave to amend.

Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure and LRCiv 7.2(e), Rules of Practice of the U.S. District Court for the District of Arizona, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy.

Fed.R.Civ.P. 72(b)(2). No replies to objections shall be filed unless leave is granted from the District Court to do so. If objections are filed, the parties should use the following case number: **CV 13-0023-TUC-CKJ**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may be deemed a waiver of the party's right to de novo review of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.) (en banc), cert. denied, 540 U.S. 900 (2003).

Dated this 31st day of July, 2014.

CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE